# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DERRICK BARHAM,** | )<br>) |
| **Plaintiff,** | )<br>) |
| v. | ) Case No. CIV-14-388-JHP<br>) |
| **ROBERT DONALD TONEY, and**<br>**CANAL INSURANCE COMPANY,** | )<br>)<br>) |
| **Defendants.** | ) |

## REPORT AND RECOMMENDATION

The Plaintiff Derrick Barham brought suit against, *inter alia,* the Defendants Robert Donald Toney and Canal Insurance Company[1] seeking damages arising out of injuries from a motor vehicle accident. The Plaintiff originally filed this case in state court in LeFlore County, Oklahoma, Case No. CJ-13-272, on December 26, 2013, but the Defendants removed the case to this Court on September 9, 2014. On July 13, 2016, this Court entered an Administrative Closing Order, noting that it had been advised by counsel that the action has settled, or was in the process of settling, and that the case was dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(2). *See* Docket No. 64. The Defendants have now filed a Motion to Enforce Settlement [Docket No. 65], asking the Court to vacate the dismissal without prejudice for the limited purpose of entering an order enforcing the party's agreement to settle this case. The Court referred the motion for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A), and the

---

[1] The undersigned Magistrate Judge notes that an additional Defendant, MCM Enterprises, LLC, was also named but has since been dismissed from this case. *See* Docket No. 60.

undersigned recommends GRANTING the Motion to Enforce Settlement [Docket No. 65].

## A. Factual Summary

As an initial matter, the undersigned Magistrate Judge notes that Plaintiff's attorneys of record moved on June 9, 2016 to withdraw from this case, citing an irreparable deterioration of the attorney-client relationship. *See* Docket No. 58. The Court entered an Order on June 16, 2016, directing the Plaintiff to enter an appearance on his own behalf or obtain new counsel within thirty days, and permitting Plaintiff's current counsel to withdraw upon Plaintiff's compliance or expiration of the thirty days. *See* Docket No. 61. Before that deadline expired, the parties began to engage in further settlement negotiations which ultimately resulted in notice to the Court on July 13, 2016 that the case had settled; in response, the court entered an Administrative Closing Order. *See* Docket No. 64.

Less than a month after the entry of the Administrative Closing Order, the Defendants filed the present Motion to Enforce Settlement on August 11, 2016, and Chief District Judge James H. Payne held a hearing on the motion on September 12, 2016. At that time, counsel for Defendant represented that he believed this case had settled, and that there was not a disagreement about whether the case had settled or what the terms of that settlement were, but that it was his understanding that the Plaintiff no longer wished to abide by the terms of the agreement. Hr'g Tran., Sept. 12, 2016, pp. 6-7. Plaintiff's counsel Rusty Smith at that time noted that he believed he was still "technically" the counsel of record for the Plaintiff, then recounted to the Court that the Defendant had

offered $60,000.00 to settle the case, that the Plaintiff had verbally accepted the offer during a phone conversation with co-counsel of record Alex Wilson, and that Mr. Wilson then confirmed the acceptance of the offer in writing to counsel for Defendants. *Id.* at pp. 8-9. Mr. Smith then stated that he had since encountered difficulty in getting the Plaintiff's signature on the written settlement documents, and that the Plaintiff no longer wished to sign the documents. *Id.* at p. 9. The Plaintiff also addressed the Court, indicating that he was asking for a "third mediation" in this case, that he was "this close" to obtaining new counsel in this case, and that he had contacted a Tulsa attorney who was going to take his case. *Id.* at 11. The Court then directed Plaintiff's present counsel to remain in this case until Plaintiff had obtained new counsel, and ordered Plaintiff to have new counsel enter an appearance by Thursday, September 15, 2016, or he would dismiss the case without prejudice. *Id.* at p. 27. The Plaintiff did not obtain new counsel, nor was the case dismissed without prejudice.

On October 7, 2016, the Court instead referred the pending Motion to Enforce Settlement to the undersigned Magistrate Judge, and it came on for evidentiary hearing on October 27, 2016. *See United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993) ("[T]he majority of our sister circuits agree that where material facts concerning the existence of terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing.") (collecting cases). Prior to the hearing, the undersigned Magistrate Judge gave the parties the opportunity to meet with U.S. Magistrate Judge Kimberly West for further settlement negotiations in light of Mr. Barham's request for a "third mediation," but they were unsuccessful. *See* Docket No. 79. At the hearing, the

Plaintiff indicated that he wanted a dismissal without prejudice, but he believed that any responsibility for paying expenses or attorney's fees arising out of re-filing the case would be unconstitutional, in violation of his due process rights.[2] When asked about attempts to obtain new counsel, the Plaintiff indicated that it had been difficult to find new counsel but that he had spoken to two attorneys who were considering taking his case.

At the hearing, the Defendant then called Plaintiff's counsel Alex Wilson, who testified that he received an emailed settlement offer on behalf of the Plaintiff in the amount of $60,000.00, and had then conveyed the Defendant's settlement offer to the Plaintiff. Mr. Wilson testified that the Plaintiff accepted the offer and wished to proceed with settlement of the case. Mr. Wilson then drafted a letter accepting the settlement offer on behalf of the Plaintiff. Mr. Barham then testified that he had told Mr. Wilson to accept the settlement offer of $60,000.00. He then continued, stating that he had been suffering from seizures and post-traumatic dress disorder, and that he was taking medications and had been having marital problems during this time as well. He reiterated that he agreed to settle for $60,000.00, but that he did not know he would only be left with around $3,000.00 out of that amount, and that settlement offers had started at $90,000.00 and kept dropping every week. In response to questioning from the undersigned Magistrate Judge, the Plaintiff testified that he did not accept any of the

---

[2] It appears that a rough estimate of Defendant's attorney's fees at this time is approximately $82,000.00. *See AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997) ("When a plaintiff dismisses an action without prejudice, a district court may seek to reimburse the defendant for his attorneys' fees because he faces a risk that the plaintiff will refile the suit and impose duplicative expenses upon him.").

Defendant's settlement offers prior to the offer for $60,000.00, but that he did accept the $60,000.00 offer. The Plaintiff then read a statement to the Court, in which he indicated, *inter alia*, that he released his attorneys from their representation of him, that he had experienced negligent representation by Mr. Wilson, and that he was expressing his constitutional due process rights to mediation and/or a trial. He then proceeded to set out a new dollar amount and a number of other terms for which settlement would be acceptable.

Based on the testimony and evidence presented at the hearing, the undersigned Magistrate Judge made preliminary finding at the hearing that there was a settlement agreement, and stated that he was going to find: (i) that the case was settled, (ii) that the settlement agreement ought to be enforced, (iii) and Mr. Wilson and Mr. Smith ought to be permitted with withdraw. Following the undersigned Magistrate Judge's announcement at the hearing, Mr. Barham, through attorney Alex Wilson, filed an objection to the findings and recommendation announced at the hearing. In that same objection, counsel for Mr. Barham again moved for leave of the Court to withdraw as attorneys of record for Mr. Barham in this case. *See* Docket No. 81.

## B. Analysis

A district court may only enforce a settlement agreement in a case where the litigation is still pending before it. *See Hardage*, 982 F.2d at 1496 ("A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it."). "The [Supreme] Court held that, once the parties to a lawsuit have settled and the district court has dismissed the case, the district court does

not have ancillary jurisdiction to enforce the parties' settlement agreement. A district court can, however, retain jurisdiction over a settlement agreement if the order of dismissal shows an intent to retain jurisdiction or incorporates the settlement agreement." *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994), *citing Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-382 (1994). Here, the Court stated in the Administrative Closing Order: "The Court retains complete jurisdiction to vacate this order and to reopen the action upon cause shown that settlement has not been completed and further litigation is necessary." Docket No. 64. Accordingly, the undersigned Magistrate Judge finds that the District Court retained jurisdiction over the settlement agreement in this case.

Issues that arise with regard to settlement agreements are governed by applying state contract law, which here is Oklahoma law. *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004). "An enforceable contract requires the parties' 'mutual consent, or a meeting of the minds' on all the essential terms of the contract." *Young v. Chappell*, 2010 OK CIV APP 76, ¶ 8, 239 P.3d 476, *quoting Beck v. Reynolds*, 1995 OK 83, ¶ 11, 903 P.2d 317, 319. "A settlement agreement is an oral or written contract between the parties. As such, it is subject to the rules of offer and acceptance and of mutual assent which control any issue of contract formation." *In re De-Annexation of Certain Real Property from City of Seminole*, 2009 OK 18, ¶ 8, 204 P.3d 87, 89. Here, the undersigned Magistrate Judge finds that there was an oral settlement agreement created when the Plaintiff informed his attorney over the phone that he accepted the Defendants' offer.

"It is basic in contract law that an acceptance will not bind the offeror unless it is unconditional, identical to the offer, and does not modify, delete, or introduce any new terms into the offer." *Ollie v. Rainbolt*, 1983 OK 79, ¶ 19, 669 P.2d 275, 280.

> "Under Oklahoma law, settlement agreements, which may be oral or written, are controlled by "the rules of offer and acceptance and of mutual assent which control any issue of contract formation." *In re De–Annexation of Certain Real Property from City of Seminole,* 204 P.3d 87, 89 (Okla.2009). The consent of the parties must be free, mutual, and "[c]ommunicated by each to the other." *Id.* A party generally may not repudiate a settlement agreement absent fraud, duress, undue influence, or mistake. *Whitehorse v. Johnson,* 156 P.3d 41, 46 (Okla.2007).

*Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013). "In Oklahoma, the existence of a contract, and in particular 'whether the minds of the parties ever met in complete agreement,' is a question of fact." *GET, LLC v. City of Blackwell*, 407 Fed. Appx. 307, 309 (10th Cir. 2011) (citations omitted). "A contract includes not only the promises set forth in express words, but all such implied provisions as are indispensable to effectuate the intent of the parties and as arise from the language of the contract and the circumstances under which it was made." *Whitehorse v. Johnson*, 2007 OK 11, ¶ 9, 156 P.3d 41 (citations omitted). Likewise, "absent a showing of fraud, duress, undue influence or mistake, a court should enforce the *entire* settlement agreement. It does not support the proposition that a court should carve out and enforce only the financial terms agreeable to a party refusing to sign a release." *Coulter v. Carewell Corp. of Oklahoma*, 2001 OK CIV APP 36, ¶ 19, 21 P.3d 1078.

Here, it is apparent from the record that the parties reached a settlement and that all of the attorneys were in agreement as to the terms of the settlement. Mr. Barham was

clear in his testimony that he authorized Mr. Wilson to settle on his behalf, and "there is a presumption that an attorney has express authority to settle unless there is evidence to the contrary in the record." *Shoels* 375 F.3d at 1060. *See also GET, LLC*, 407 Fed. Appx. at 317 ("The attorneys' communications to each other as they completed work on the draft agreement, their representation to the magistrate judge, and their acquiescence in the ensuing orders expressly reciting that they had reached settlement, support the court's determination.").

Mr. Barham, however, seeks to be relieved from the terms of this settlement. His testimony is very clear that he agreed to settle the case for $60,000.00. It is somewhat less clear what the exact details and parameters of the settlement entailed. Mr. Barham testified that he agreed to the $60,000.00 but that he was unhappy when he found out that his "take-home" cut of that would be substantially less. But that was not the sole substance of his testimony. He further testified that: (i) he had agreed to settle because he was having difficulties in his personal life and wanted to be done, and (ii) he really wanted more money, perhaps the original $90,000.00 settlement offer that he had previously reject but perhaps nothing less than the $100,000.00 policy limits.

In essence, Mr. Barham's testimony is that he was no longer satisfied with the bargain to which he had previously acquiesced. But the courts have been clear that "a party who knowingly and voluntarily authorizes the settlement of h[is] claims cannot avoid the terms of the settlement simply because []he changes h[is] mind." *Woods v. Denver Dept. of Revenue, Treasury Div.*, 45 F.3d 377, 378 (10th Cir. 1995). *See also Brackens v. Sedgwick Claims Management Services, Inc.*, 2008 WL 906121, at *3 (D.

Colo. April 1, 2008) ("Changing one's mind about a contract, as Plaintiff admits he did, is not grounds to avoid the ramifications of an enforceable contract."); *Gardner v. United States*, 2013 WL 3457142, at *4 (D. S.C. July 9, 2013) ("Plaintiff is having misgivings about the amount for which she settled her claims, not that she was pressured into settlement. Still, even if Plaintiff is correct that she could have received a greater amount, this does not justify setting aside the agreement."), *citing Hensley v. Alcon Labs, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). Mr. Barham seems to be under the impression that if he could start over, he would be able to obtain a greater amount in settlement. True or not, he may not now avoid the agreement he did make. Accordingly, the undersigned Magistrate Judge finds that the parties reached a settlement in this case and further recommends that the settlement be enforced.

The undersigned Magistrate Judge notes that the Defendants have requested attorneys' fees be paid for the efforts expended in enforcing the present settlement agreement, and that those fees be assessed directly against Mr. Barham, rather than his current counsel. Because such an award is discretionary with the Court, the undersigned Magistrate Judge recommends denying the request for fees as such would not act as a deterrent under the circumstances of this case. *See Farmer v. Banco Popular of North America*, 791 F.3d 1246, 1256-1257 (10th Cir. 2015).

Finally, the undersigned Magistrate Judge recommends that the request to withdraw by Plaintiff's counsel, attorneys Rusty Smith, Alex Wilson, and Martha Cherbini, of Brennan Smith & Cherbini, PLLC, be granted forthwith.

### C. Conclusion

In summary, the undersigned Magistrate Judge PROPOSES the findings set forth above and accordingly RECOMMENDS that Defendants' Motion to Enforce Settlement [Docket No. 65] be GRANTED. Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

IT IS SO ORDERED this 7th day of December, 2016.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma